JUSTICE NELSON
specially concurs.
I concur in our opinion. It is disheartening, however, that we have found it necessary to include at the end of our legal discussion a statement of the obvious — that just because Bill Strizich is a public figure, he is entitled to rely on the protection of the law the same as any other citizen. Even that will likely not forestall the criticism from those who view our court system as being preoccupied with legal niceties to the exclusion of what they believe is the only proper role of the judiciary — i.e. “to take, a bite outt’a crime” and “to lock ‘em up and throw away the key.” Nonetheless, before the faultfinders swell up in righteous indignation, they at least should consider certain aspects of this case that are not brought out in the opinion proper, since it was unnecessary to do so in our discussion of the dispositive legal issue.
One cannot review the entire record in this case without coming away with a feeling of distaste. In ruling on various of the City’s pretrial motions, the District Judge entered a number of findings of fact based on evidence taken from the parties and after having heard oral argument. While these do not do credit to the manifest frustration of the District Judge with the City as revealed in the transcripts, even these paint a less than complimentary picture of the police and the prosecution.
As to the initial investigation and stop of Mr. Strizich, Judge McKittrick found, in pertinent part, as follows:
1. On November 4,1995, William Strizich was arrested by Great Falls Police Officer Christopher Hickman and cited with violation of 61-8-401, M.C.A., for operating a motor vehicle while under the influence of alcohol.
2. Approximately 20 minutes before he arrested Strizich, Hickman observed Strizich standing by a roadway in a Great Falls residential area with some other individuals. Hickman spoke with Strizich, and Strizich advised him that everything was fine, and that they were just trying to get a friend of Strizich’s indoors. Hickman stated that he could understand Strizich clearly when he spoke with him.
3. After Officer Hickman left Strizich by the side of the roadway, he drove to a location two blocks away, and ran the license plate of the vehicle near which Strizich had been standing. He learned that *15 the vehicle was registered to U.S. Marshal William Strizich and his wife.
4. Officer Hickman admitted “laying in wait” for Strizich, testifying that he waited in his patrol car with the intent that if Strizich got into his vehicle and drove it, he would arrest him.
5. While he waited for Strizich to operate his vehicle, Hickman called Great Falls Police Sergeant Greg Church on his cellular phone and asked him to come to the location where Hickman was parked waiting for Strizich. Hickman told Church what route to take and to keep his headlights off so as not to alert Strizich. When Church arrived, Hickman told Church he had “a big fish DUI.”
6. After waiting for 15 to 20 minutes, Hickman observed Strizich operating his vehicle. He followed the Strizich vehicle for approximately 7 blocks, before stopping him and eventually arresting him for DUI.
7. Hickman testified that during the entire period of time that he followed Strizich’s vehicle — for approximately 7 blocks, through two traffic controlled intersections, and after two left-hand turns — Strizich made no unsafe driving maneuver.
8. Hickman testified that Strizich did not weave, did not exceed the speed limit, did not cross the center line, did not make excessively wide turns, did not brake suddenly, did not brake at green lights, did not fail to stop at a stop sign, and did not fail to yield the right of way. Hickman has been trained in night-time DUI detection, and these are the cues he looks for in determining whether a person is driving under the influence of alcohol.
9. Hickman stopped Strizich in an alley, had a conversation with him, asked him to perform field maneuvers, and asked him to take a Preliminary Breath Test (PBT). Strizich complied with these requests.
In denying the City’s motion to preclude the defense from presenting evidence to the jury of prior “bad acts” of the police, Judge McKittrick concluded that such evidence was relevant to the issue of the police officer’s credibility The court ruled:
D. In light of the admission that Officer Hickman was “laying in wait” for Strizich, and referred to him as a “big fish DUI” before the arrest was made, the jury could infer that Hickman had a bias against Strizich prior to the arrest, and that he now has an interest in the outcome of the litigation. Under these circumstances, evidence of Hickman’s previous confrontations with the public and *16 evidence of previous violations by Hickman of the civil rights of members of the public t[1]] are and shall be admissible into evidence in this case, providing the Defendant can show relevancy and establishes a proper foundation.
So much for the “particularized suspicion” which was presumably the basis on which Mr. Strizich was initially stopped.
As for the attempt by the prosecution to place before the jury evidence of Mr. Strizich’s PBT results, the court’s decision was equally critical. At the outset, it is important to keep in mind that, as our opinion points out, the issue of the admissibility of the PBT results as substantive evidence had been for all practical purposes decided by the legislature and the Forensic Science Division of the Department of Justice against the prosecution long before the City decided to make this an issue in Mr. Strizich’s case. It was the City’s attempt to get this evidence into the trial that delayed the trial date; that necessitated the City hiring an expert criminalist from California; that necessitated filing numerous briefs; that necessitated a hearing in City Court; that, not surprisingly, resulted in the ruling from City Judge Luth holding the evidence to be inadmissible; that enabled the prosecution to appeal the “suppression” of the evidence to the District Court and, thus, get the case away from a judge that the City, three months after the arraignment and three weeks prior to the original date set for trial, had unsuccessfully tried to disqualify; that necessitated further briefing and a hearing in District Court; that, again not surprisingly, precipitated a ruling by the District Judge holding the evidence inadmissible; and that ultimately was the key factor in the City’s losing its entire case on appeal to this Court. In truth, this was a non-issue, unwinnable from the start.
The legislature and Department of Justice had already determined that PBT results were not sufficiently reliable to be considered substantive evidence. This was confirmed by the City’s California expert who, according to Judge McKittrick, acknowledged that the PBT can be influenced by a broad range of factors. According to the court, the City, in fact, conceded that “there is a whole laundry list” of things that could go amiss during the field use of a PBT device. The court found that the California expert gave no ultimate opinion on *17 the reliability of the PBT, because the prosecution failed to lay a proper and sufficient foundation for such an opinion. Moreover, another prosecution witness-the very individual who authored the Department of Justice rule referred to in our opinion-testified that, even when properly used and correctly calibrated, a PBT device can have a margin of error of plus or minus 10 percent and that he was aware of no case wherein the results of a PBT had been introduced into evidence for any purpose other than establishing probable cause. Finally, the prosecutor conceded to the District Judge that the City could have gone forward with Mr. Strizich’s trial in City Court on its scheduled date (within the required 6 months) had it not chosen to make an issue out of the admissibility of the PBT evidence — an issue that was virtually dead on arrival to begin with. And, the final irony? This “case-busting” issue that the City pursued through the City Court and the District Court with expert witnesses, was eventually abandoned and was not even appealed to this Court.
So here we are. The case was not resolved on the merits and never will be; a citizen was targeted for and then subjected to a DUI arrest more for who he was than what he did; there has likely been a substantial amount of taxpayer money spent on a prosecution that went absolutely nowhere; instead of the speedy trial he wanted, demanded and was constitutionally entitled to, Mr. Strizich has been twisting in the breeze for over two years through three different courts (at his expense, not the taxpayers, by the way); and this Court has contributed yet another opinion to this State’s criminal jurisprudence. And for what? So the City could catch and fry a Big Fish.
The only good news in this shameful debacle is that when the hand-wringers gather to assess the blame for this one, at least they won’t have to look very far from home.

. According to the District Court, Officer Hickman testified in his deposition that he had been reprimanded 10-20 times, both orally and in writing, for his attitude towared the general public.